[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Colleen Guckin, were married on March 24, 1984 in Meriden, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date of the filing of the complaint. The marriage between the parties has CT Page 9306 broken down irretrievably without reasonable prospects of reconciliation. There are two minor children issue of the marriage: Alyssa Young, born August 14, 1984; and David Young, born March 17, 1987. No other minor children have been born to the defendant wife since the date of the marriage of the parties. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown. The defendant claims that the plaintiff is guilty of intolerable cruelty. The court finds that the defendant has failed to prove that claim by a fair preponderance of the evidence. The court does find that the primary cause of the breakdown of the marriage was emotional abuse by the plaintiff and lack of intimacy on his part.
The plaintiff is forty-six years old.
When the parties married, the plaintiff had an income of approximately $40,000 per year.
The plaintiff presently is renting a small home. He has spent approximately $12,000 to furnish it since the date he vacated the family residence. Some of the furniture was paid for in cash and some by credit card.
The plaintiff has various deferred compensation plans. The following represents the correct balances on those plans:
1. VFTC money purchased pension $111,645.55;
2. VFTC profit-sharing retirement plan $81,821.54; and
3. VFTC IRA $9,565.22.
The deferred compensation plan shown with VFTC is with Vanguard Fiduciary Trust.
The plaintiff claims that he has overpaid the defendant $1000 since a pendente lite order was entered and seeks a credit for that amount.
The plaintiff's financial affidavit shows gross weekly income of $3538.15 and a net weekly income of $2328.15. Included in the $3538.15 is his $323 retirement income that is paid to him as part of his draw. He then deducts that amount from his gross CT Page 9307 weekly income before paying income taxes.
The correct balance in his savings account is approximately $75 rather than the $1000 shown on his financial affidavit. He also has a coin collection that has a value of approximately $600.
The plaintiff's financial affidavit on page 1 lists various weekly expenses. Those are the expenses that he claims are for the family residence. His financial affidavit in an addendum also lists various expenses. Those are the weekly expenses that he incurs for himself.
When the parties married, the plaintiff owned a condominium in Shelton, Connecticut. The condominium was purchased by the plaintiff in 1983 at a cost of $83,000. It was financed in part with a first mortgage in the face amount of $73,500. The equity that the plaintiff had in his condominium at the time he married the defendant was approximately $9,500. He also owned an automobile and some furniture. The plaintiff sold his condominium on February 23, 1990. The net amount that he received, after paying the first and second mortgage and other normal closing adjustments was $25,695.47. One of the liens paid off from the sale of the condominium was a $25,000 equity loan that the plaintiff took out to apply towards purchasing a lot in Hamden at a total cost of $50,000. The house that was built in Hamden had a total construction cost of $150,000. The parties moved from the plaintiff's condominium into their Hamden home in about March of 1987.
When the parties married, the plaintiff was employed by MCA as a creative director (advertising executive). He continued to work for MCA after the marriage. In 1988, he stopped working for MCA and started his own business, which he now owns, known as Young Associates. He is sole owner of that business. The business first started by working out of the parties' Hamden home. The parties are in dispute as to the value of the plaintiff's business. From the evidence presented, the court finds that its fair market value is $92,000. Part of the $92,000 consists of equipment and office furniture owned by Young Associates. As of the end of the calendar year 1994, the total cost of such equipment and office furniture was $56,850. During the calendar year 1995, Young Associates purchased additional office equipment at a total cost of $16,909. Young Associates has been taking depreciation on those assets as allowed by the Internal Revenue CT Page 9308 Code.
Young Associates is now occupying rental office space in Westport, Connecticut. There are two full-time employees. There have been as many as four full-time employees. Young Associates designs and develops advertising mostly in the graphic field. It has eight clients, two of whom are major clients. The two major clients represent approximately 80 percent of the gross income.
The plaintiff does not have any written contract with any of his clients.
Young Associates owns all of the equipment shown on plaintiff's exhibits 8 and 9.
The defendant is thirty-eight years old and is a high school graduate.
The defendant was the party primarily responsible for maintaining the home and raising the children.
The defendant was twenty-five years old when she married the plaintiff. Neither party had been previously married. The defendant is under the care of two doctors following surgery for breast cancer. She had chemotherapy treatment initially once a week, then once every four weeks between the period of October, 1995 and April, 1996. She would be incapacitated for several days following each treatment. She will continue to have bone scans and blood work done for the next five years.
There is an approximate 65 percent of recurrence of cancer with standard therapy. The defendant had superior therapy so the risk of recurrence may be less. She presently sees Dr. Burd, her oncologist, every three months. After two years, she will see him every six months for five years. She will then have annual checkups with him. If there is a recurrence of her cancer, it will most likely occur within the first two years.
The defendant intends to have breast reconstruction surgery immediately after the trial. The cost of approximately $10,000 will be covered by health insurance. She will then have a five to six week recovery period, followed by additional surgery. The total time for all the surgery, together with recovery period, will be anywhere from six to twelve months. She tires easily as a result of her cancer and is in continual fear from the cancer. CT Page 9309
When the parties first married, the defendant was earning approximately $5 hourly working as a paste-up artist for a newspaper. She has also worked at a day care center from January, 1995 to the end of May, 1995, at an $8 hourly rate. During the summer of 1995, the defendant was working at a day care center earning $650 monthly. During the summer time, there are fewer children who attend day care. She hopes to further her high school education in order to be able to have the skills to be able to support herself.
The cost to the defendant to have COBRA coverage will be $335.71 quarterly or $112.96 monthly. The defendant's financial affidavit shows a weekly telephone expense of $61.75. That expense is approximately $28 weekly. She also shows a food expenses of $200 weekly. That expense is approximately $160 weekly.
The defendant has two deferred compensation plans: a VFTC money purchase pension with a value of $2039.83; and a VFTC profit sharing with a value of $2333.95.
The parties lived in their Hamden home from 1987 to 1993. They then sold their Hamden home and purchased the present family home owned at 53 High Ridge Road, Redding, Connecticut. The Redding home costs approximately $380,000. It was financed through a first mortgage of approximately $300,000, with the balance paid in cash. The property is in joint names. Since purchasing the property, there have been various improvements that were completed including a pool, fencing, lighting, air conditioning, carpeting and fencing. The total improvement cost was in excess of $50,000. The cost of the pool alone was in excess of $30,000, and was financed by a home equity loan that was taken out by both parties in June of 1994, under a five year note. The balance that is due on the first mortgage is $292,358. The balance due on the home equity loan that was originally in the amount of $33,000 is $19,642.
The plaintiff vacated the family home in August of 1995. He paid the defendant $6000 monthly without a court order after vacating the family home.
The parties are in dispute as to the fair market value of the family home at 53 High Ridge Road, Redding, Connecticut. The plaintiff claims that its value is $450,000, and the defendant CT Page 9310 claims the value at $437,500.
The court finds the fair market value of the home is $437,500.
The parties are in dispute as to the fair market value of the household furniture at the family home. The court finds that its value is slightly over $5000. The 1992 Blazer that is in the defendant's name only has a fair market value of $10,000.
When the parties married, the defendant owned an automobile and some furniture.
The plaintiff owns a Corvette that is presently at a Manchester, Connecticut, body shop where it has been located since the spring of 1994 for restoration work.
The Corvette won top awards at a showing in 1994. It was placed with a restoration shop to correct some of the deficiencies that were pointed out to the plaintiff at various car meets. He purchased the vehicle in 1993 for $19,000. The cost of doing the body work for the Corvette is approximately $11,000. Since purchasing the Corvette, the plaintiff has spent several thousand dollars for Corvette parts.
The value of the Corvette, when the plaintiff purchased it on October 16, 1993, was $21,000. Its value at the present time, in its present stripped down condition, is $13,000. This vehicle previously won a topflight award. If the plaintiff had not commenced to restore the vehicle, its present fair market value would be approximately $22,000 to $23,000.
In the calendar year 1987, the plaintiff earned $64,883.48 working for Marketing Corporation of America. During that same calendar year, the defendant earned $8000 working for the plaintiff d/b/a Young Associates doing paste-up work. During the calendar year 1990, Young Associates had gross receipts of $250,223 and a net profit of $80,722. During the calendar year 1991, Young Associates had gross receipts of $389,372 and a net profit of $130,102. During the calendar year 1992, Young Associates had gross receipts of $559,101 and a net profit of $120,750. During the calendar year 1993, Young Associates had gross receipts of $665,827 and a net profit of $211,259. During the calendar year 1994, Young Associates had gross receipts of $636,546 and a net profit of $223,398. A proposed draft for the CT Page 9311 income tax for the taxable 1995 shows Young Associates with gross receipts of $497,079 and a net profit of $160,284.
Except for the income that the defendant earned working for the plaintiff in 1987 of $8000, she has not worked in her field as a graphic artist since approximately June of 1984. It is clear that the plaintiff has a substantially greater earning capacity than the defendant.
The reason for the reduction in gross sales from 1994 to 1995 was primarily as a result of a reduction in work from one of the two major clients as well as a reduction in prices.
The parties are in agreement that an order of joint custody, with the primary physical residence of the children with the defendant, with the plaintiff having flexible visitation rights, should enter in this case.
At the present time, the defendant and the two children are covered by the plaintiff's health plan. The health plan has an initial $1000 deductible per person, and then pays 80 percent of the next $5000 following which there is full coverage. It is carried through the Golden Rule Health Company. The plaintiff has been paying the deductible and unreimbursed portion of that policy.
The cost for maintaining health insurance for the plaintiff alone is $20 weekly. The cost for maintaining the health insurance for the two children alone is an additional $23 weekly.
The plaintiff claims that the proper support order under the child support guidelines is $457 total for the two children. The plaintiff has submitted a child support guideline worksheet. The court finds, in accordance with that worksheet, that his net weekly income for child support purposes is $2631. The plaintiff's worksheet then claims that the total support obligation under the guidelines for that income is $480, less a $23 health insurance premium adjustment. The $480 calculation is flawed in that the support guidelines show $480 weekly to be the appropriate amount of support for two children at a combined net weekly income of $1750. The guidelines provide that when the net weekly income exceeds $1750, that the court then remains free to fashion the appropriate child support award on a case-by-case basis, provided the amount of support prescribed at the $1750 level is presumed to be the minimum that should be ordered in CT Page 9312 such case.
When the plaintiff commenced the present dissolution action, he gave the defendant $3000 to apply towards her legal fees.
The court has considered the provision of § 46b-82 regarding the issues of alimony, and has considered the provision of § 46b-81 (c) regarding the issues of property division, and has considered the provision of § 46b-56 and § 46b-56a regarding the issues of custody and joint custody and visitation, and has considered the provision of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provision of § 46b-62 regarding the issue of attorney fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION
The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF CUSTODY AND VISITATION
1. The parties shall have joint custody of the minor children whose primary residence will be with the defendant wife.
2. The parties have stipulated to the following provision, which the court approves and orders, namely, that there should be a review by the Superior Court in Danbury or whatever Superior Court is appropriate based on venue. That review shall be of custody and visitation should the defendant move more than fifty miles away from 53 High Ridge Road, Redding, Connecticut.
3. The plaintiff is awarded flexible visitation rights.
C. BY WAY OF SUPPORT
1. The court orders that the plaintiff pay to the defendant by way of support the sum of $680 weekly by immediate wage execution. The plaintiff is also ordered to provide health insurance and dental coverage for the benefit of the minor children. The health insurance and dental coverage is to be maintained for the benefit of each minor child for so long as he is obligated to pay support for such child. The parties are to divide equally any uncovered or unreimbursed health or dental expenses. CT Page 9313
2. The court orders that the plaintiff provide the defendant, on the first day of each month, with copies of the explanation of benefits that he receives from the health insurance carrier regarding health insurance benefits for the minor children.
3. The plaintiff is ordered to maintain his existing life insurance in the face amount of $300,000 on his life, with the minor children named as equal beneficiaries. The face amount of that coverage may be reduced by $20,000 annually, commencing one year from the date this decision is filed, and annually thereafter.
4. The plaintiff shall have the right to claim the minor children as deductions for federal and state income tax purposes for each calendar year in which he is current and at the end of such calendar year in his support payments and alimony payments, if applicable.
D. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $750 per week.
2. Alimony is to terminate on the earliest event: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the defendant.
3. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
4. The plaintiff is to provide health insurance for the defendant on the COBRA for the maximum period allowed by law, including dental coverage. The plaintiff is to pay 65 percent of such cost, and the defendant is to pay 35 percent of such cost.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is ordered to transfer to the defendant all of his right, title and interest in the family home at 53 High Ridge Road, Redding, Connecticut. The defendant is to pay the first mortgage and hold the defendant harmless therefrom. The plaintiff is to pay the home equity line and hold the defendant harmless therefrom. CT Page 9314
2. All of the defendant's interest in Young Associates is awarded to the defendant.
3. All of the furniture in the possession of the plaintiff is awarded to the plaintiff.
4. All of the furniture in the possession of the defendant is awarded to the defendant.
5. The plaintiff is awarded full ownership of the Chevrolet Corvette. The defendant is ordered full ownership of the 1992 Chevrolet Blazer. The plaintiff is to execute whatever documents are required in order for the title to the 1992 Chevrolet Blazer to be in the defendant.
6. The coin collection in the possession of the plaintiff is awarded to the plaintiff.
7. All bank accounts in the plaintiff's name are awarded to the plaintiff.
8. All bank accounts in the defendant's name are awarded to the defendant.
9. The two deferred compensation plans shown on the defendant's financial affidavit are ordered to be divided equally between the parties by QDRO.
10. The three deferred compensation plans on the plaintiff's financial affidavit, namely, the VFTC money purchase pension plan, the VFTC profit sharing retirement plan, and the VFTC IRA are ordered to be divided equally between the parties by QDRO.
11. All of the liabilities shown on the supplemental page 2 of the defendant's financial affidavit, except for the Yale School of Medicine, are ordered to be paid by the defendant, and she is to hold the plaintiff harmless. The Yale School of Medicine bill is ordered to be divided equally between the parties after the plaintiff first submits that bill for insurance coverage and the insurance carrier pays whatever amount it pays. The liabilities shown on the first page of the defendant's financial affidavit to Macy's, People's Bank VISA, Sears, Jacqueline Abbot, Choice VISA Gold, Town and Country (pool maintenance), Leahy's (propane pool), and J.C. Penney are ordered to be paid by the defendant, and she is to hold the plaintiff CT Page 9315 harmless. All remaining liabilities shown on her financial affidavit are ordered to be paid by the plaintiff, and he is to hold the defendant harmless. The court orders that the plaintiff pay the following liabilities shown on his financial affidavit: First Card, Chemical Bank VISA and attorney's fees. The People VISA and Macy's shown on his financial affidavit are also shown on the defendant's financial affidavit, and the court orders the defendant to pay those two liabilities.
F. BY WAY OF ATTORNEY FEES AND EXPERT WITNESS FEES
1. No attorney fees are awarded in favor of either party.
2. No expert witness fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. The court approves of the stipulation of the parties and orders that in the event they file a joint federal and state income tax return for the calendar year 1995, then, in that event, the money paid by the plaintiff to the defendant in 1995 is not to be treated as an unallocated alimony and support payment.
2. The parties are to exchange copies of their federal and state income tax returns within thirty days after such returns have been filed, by certified mail return receipt, or registered mail return receipt, for so long as there is an outstanding alimony and/or support order. The plaintiff is also to provide the defendant with copies of all federal and state income tax returns for any business in which he has at least a 50 percent interest, by certified mail return receipt, or registered mail return receipt, within thirty days after such returns have been filed for so long as there is an outstanding alimony and/or support order.
3. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
4. No credit is allowed to the plaintiff for any overpayment on pendente lite orders.
Axelrod, J. CT Page 9316